UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JASON OLIVER

                          **Plaintiff,**          **COMPLAINT**

-against-

                                        **TRIAL BY JURY**
                                          **DEMANDED**

THE CITY OF NEW YORK (CITY); THE NEW
YORK CITY POLICE DEPARTMENT (NYPD);    CIV NO.
in his official capacity as then NEW YORK CITY
POLICE OFFICER JERRY BOWENS

                          **Defendants.**

---

Plaintiff, **JASON OLIVER** by and through his attorney, Rudy Velez, Esq., respectfully shows to this Court and alleges, as follows:

## INTRODUCTION

1. This is a civil rights action in which the plaintiff, **JASON OLIVER** seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. §1983 and the Fourth and fourteenth Amendments of the New York State Constitution and Constitution of the United States.

2. Plaintiff seeks money damages, attorney's fees and such further relief as this Court deems just and proper.

3. This action has commenced within three years after plaintiff's claim arose by reason of the termination of the criminal prosecution in favor of the plaintiff.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §1983 and 1988, and the

1

Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

5. Jurisdiction is founded upon 28 U.S.C. §1331,1343 (1-4) and 2202. Venue is proper in this district pursuant to 28 U.S.C. §.1391b.

## JURY DEMAND

6. Plaintiff demands trial by jury in this action.

## PARTIES

7. Plaintiff **JASON OLIVER (OLIVER)** is an American Citizen residing in Brooklyn, New York. He has not been convicted of any crime since his release from custody after serving his sentence.

8. Defendant **CITY OF NEW YORK (CITY)** is a municipal corporation organized under the laws of the State of New York and the public employer of the police officer named as a defendant in this action.

9. Defendant NEW YORK CITY POLICE DEPARTMENT (**NYPD**) is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

10. At all times relevant herein, defendant POLICE OFFICER **JERRY BOWENS** (**BOWENS**) was a Police Officer of the **NYPD**, acting as an agent, servant and employee of defendant **CITY** and in furtherance of the scope of his employment and acting under color of the law; to wit under color of statues, ordinances, regulations, policies, customs and usages of the **CITY** and/or the Police Department.

2

11. At all times relevant herein, defendant **BOWENS**, was a police officer employed by the **NYPD**.

12. **BOWENS** was fired from NYPD after his felony conviction in January, 2011 for conspiracy to steal drugs from suspects and give the dope to snitches. In addition, he was convicted of murder, murdering his girlfriend and shooting her friend.

13. At all times relevant herein, defendant **BOWENS** was acting as agent, servant and employee of defendant City of New York.

14. At all times relevant herein, the defendant was all acting under color of state law.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

15. On October 16, 2003, at approximately 01:19 A.M. plaintiff was in 3020 Surf Avenue, Brooklyn, N.Y. hanging out with a few friends. Officer BOWENS claim to have recovered a pistol from the floor where BOWENS claimed to have observed **OLIVER** drop it. He was arrested and taken to Brooklyn Central booking.

16. These charges were entirely fabricated. Plaintiff did not possess a pistol.

17. In his sworn Criminal Court Complaint defendant BOWENS claimed that plaintiff was observed by him to drop a loaded pistol to the floor. In reality, one of the friends **OLIVER** was hanging out with dropped the gun, but BOWENS did not see who dropped it and elected **OLIVER** as the culprit who dropped the pistol.

3

18. This sworn statement was entirely fabricated. Plaintiff did not drop or possess a pistol as then Police Officer BOWENS claimed. While Police officer BOWENS faced Criminal charges for police misconduct he murdered his girlfriend and attempted to murder his girlfriend's friend. Plaintiff's conviction for criminal possession of a weapon in the third degree, in violation of New York penal code section 265.02 (4) was vacated, and his indictment dismissed with the consent of the Kings County District Attorney's Office on November 4, 2022. Other convictions from cases in which BOWENS play a key role were also vacated and dismissed on or about November 4, 2022.

19. According to a New York Times article of November 17, 2022, the Kings County District Attorney's office consented to the vacatur of numerous convictions that had relied upon 13 former police officers who had subsequently been convicted of crimes. Forty-seven of the cases including plaintiff's, were felonies.

20. On November 4, 2022 **OLIVER'S** criminal court counsel moved to vacate his conviction pursuant to a writ of error coram nobis.

21. According to the same article, in 2021 and 022 a total of 876 convictions -250 in the Bronx, 188 in Manhattan, 378 in Brooklyn, and GO in Queens—were vacated upon consent of the District Attorneys because the convictions depended on the word of NYPD officers who had been convicted of crimes or otherwise discredited.

22. While case was pending **OLIVER** faced the prospect of jail time for these false charges. He was severely traumatized and suffered severe emotional harm but was able to negotiate a non-incarcertory disposition of 5 years felony probation.

23. The acts complained of herein, and the vacatur of 876 convictions referenced in par. are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers.

24. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officer and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

25. The official policies, practices and customs of the City of New York and the NYPD, alleged herein violated plaintiff's rights guaranteed by 42 USC § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

26. The conduct towards plaintiff alleged in this Second Claim for Relief subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, suffering.

27. The Supreme Court of New York, County of Kings ordered that **OLIVER'S** judgement of conviction be vacated on November 4, 2022. In addition, on this same date, it was further ordered that **OLIVER'S** indictment be dismissed with prejudice.

## CAUSES OF ACTION

## COUNT ONE

## 42 U.S.C. § 1981, 1983 FOURTH AND FOURTEENTH VIOLATIONS: MALICIOUS PROSECUTION

28. The plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

29. On or about October 16, 2003 the defendants initiated a criminal proceeding against the plaintiff by misrepresenting and falsifying evidence in the criminal court brought by and signed by then P.O. BOWENS P.O. BOWENS continued his lies in the grand jury in order to secure an indictment.

30. P.O. BOWENS was the primary witness and there was no other independent evidence to support his claims.

31. Plaintiff states that then P.O. BOWENS did not make a complete and full statement of facts. P.O. BOWENS misrepresented and falsified evidence that created a falsehood in signing the felony complaint and P.O. BOWENS lies were material for a finding of probable cause.

32. In commencing and continuing the prosecution of plaintiff, defendants caused plaintiff to be falsely charged with acts in violation of the Penal law of the State of New York.

33. Plaintiff had not given defendant CITY, its agents, servants or employees, including then P.O. BOWENS probable cause to believe that plaintiff had committed the falsely charged illegal acts.

34. The defendants acted with malice because then P.O. did not arrest plaintiff with the desire to see the ends of justice served but rather with a false motive of planting and fabricating evidence.

35. As a result of the false evidence provided by defendants, plaintiff was forced under threat of issuance of a warrant to defend against false charges.

36. The conduct of the defendants was the direct and proximate cause of plaintiff's loss of liberty by completing 5 years of probation and violated plaintiff's statutory rights guaranteed by the laws and Constitution of New York and the United States.

37. On November 4, 2022, plaintiff's conviction was vacated and the indictment dismissed with prejudice pursuant to an order of the Supreme Court, of the State of New York.

## COUNT TWO

## 42 U.S.C §1981, 1983 AND THE FOURTEENTH AMENDMENT

## VIOLATIONS FOR FABRICATED EVIDENCE

38. Plaintiff repeats and reiterated the allegations contained in paragraphs "1"through "37" of the complaint as if fully set forth herein. On or about October 16, 2003 in the County of Kings, New York, **OLIVER** was unlawfully detained arrested imprisoned by agents, servants, and/or employees of defendant, **CITY** including **P.O BOWENS**.

39. That the aforesaid arrest and imprisonment was malicious unlawfully and not based upon a warrant, probable cause, and or any exigent circumstances but by fabricated-evidence.

40. That defendant **CITY** through its agents, servants and/or employees, including police defendant's, **P.O BOWENS** acted in bad faith and without probable cause; to wit, he lied about his observation of possession of crack-cocaine by **OLIVER**.

41. That the aforesaid arrest and imprisonment was made with fabricated evidence as sworn to in the criminal complaint. The information **BOWENS** forwarded to prosecutors formed

7

the basis for **OLIVER** prosecution and **OLIVER** became aware that this fabricated evidence, if believed would likely influence a jury's verdict and convict **OLIVER**.

42. The aforesaid fabrication of evidence caused **OLIVER** to suffer a deprivation of his liberty,being placed on 5 years probation.

43. By reason of the forgoing, the defendants became liable to **OLIVER** in a sum of money which exceeds the jurisdiction limit of all courts of lesser jurisdiction.

## COUNT THREE

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 1983 AND THE FOURTEETH AMENDMENT AND VIOLATIONS FOR DENIAL OF DUE PROCESS OF LAW IN VIOLATION OF THE NEW YORK AND UNITED STATES CONSTITUTIONS.

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force.

45. It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by police officers. When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial.

46. The plaintiff and all these similarly situated are denied their right to a fair trial i.e., they were subjected to a deprivation of liberty without due process of law in violation of New York and United States Constitution pursuant to the due process clause of the Fourteenth Amendment by participation of BOWENS.

8

47. **BOWENS** created false information and provided that information to the District Attorneys which was then used in **OLIVER'S**.

48. The defendant **BOWENS** consciously lied in generating OLIVER's felony complaint.

49. A hearing was held in Brooklyn Supreme Court to review certain convictions to see if **BOWENS** played a key role in bringing about those prosecutions.

50. Because **BOWENS** was already thoroughly, investigated by The Brooklyn District Attorney's Office, as well as an internal investigation by the same police department worked for, and it was found, by unequivocal, substantiated evidence that BOWNES lied and provided material false evidence in at least 184 documented cases, **BOWENS** creditability was called into questions in cases he acted as a police officer.

51 No independent evidence was found to have convicted these people, other than the word of **BOWENS** and instead of investigating each case individually, the prosecutors conducted mass exonerations only of those cases **BOWNES** played a key role as an undercover policeman.

52. The hearing involved here was a Write of Error Coram Nobis to determine if the conviction was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

53. The defendant **OLIVER** had a defense attorney assigned to him or her and the BDAO was represented by their own assistant(s), who in turn represented **BOWENS**, the officer whose conduct was under review. Evidence was presented by both sides. Argument of Counsel was heard and the Judge after due deliberation decreed that the petitioner suffered

9

a substantiative defect and denial of Due Process in violation of the United States Constitution.

54. Defendants' action resulted in the plaintiff being arrested handcuffed, incarcerated, forced to appear in court, and endure the fear of being sentenced to jail.

55. By reason of the aforesaid, the plaintiff has been damaged, and they are entitled to compensatory damages in the sum to be determined by the Court.

## COUNT FOUR

## MUNICIPAL LIABILITY FOR

## CONSTITUTIONAL VIOLATIONS: MONELL CLAIM

56. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs "1" through "55" of this complaint. Prior to October 16, 2003 defendant **CITY** developed and maintained policies and customs which caused the deprivation of plaintiff's Constitutional Rights. Prior to October 16, 2003 the responsible policy making officials of defendants **CITY** knew, or in the exercise of reasonable care should have known, that individual police officers of the **CITY** hand engaged in a pattern of practice of illegal and unconstitutional conduct, including performing false arrests, malicious prosecutions and unconstitutional searches on arrestees.

57. Shortly after Plaintiff's arrest and prosecution, the new York State Bar Association's Task Force on Wrongful Convictions released a report, Final Report on Wrongful Convictions, dated April 4, 2009. The Task Force found that police failed to make reports of "information that was viewed by the detective as not aiding the investigation". The Task

force observed that "[p]rosecutors access to evidence known to the police, depended ultimately on the willingness of the police to record, preserve, and reveal such evidence." And one of the recommendations by the Task Force as to police was the need for "Train[ing] and Supervis[ion] in the Application of Brady and Truthful Evidence Rules."

58. Police misconduct, manifested by a pattern and practice that was so widespread, that it took on the force of law, was primarily due to the enormous pressure Bowens and numerous other officers who worked with him (Arbeeny, Johnstone, Foder ) were all under pressure to meet the arrest quotas in place.

59. A pattern and practice of police misconduct in the NYPD also extends to systemic violations of the right against unreasonable and unlawful searches and seizures under the Fourth Amendment to the US. Constitution. This dates back to the stop and frisk violations that were put to apparent rest in Judge Shira Shinenellin courtroom when these violations came to light.

60. Based on data published by Pro Publica covering CCRB instigations From September 1985 to January 2020, the CCRB substantiated misconduct finding against 1,374 NYPD officers who engaged in illegal searches. i.e Fourth Amendment violations, these officers not only kept their jobs – half of them were given promotions. For example:

  i. Two Inspectors engaged in illegal searches, one later became a chief and the other a deputy chief (100%);

  ii. Four Deputy Inspectors engaged in illegal searches, all four were later promoted (40%);

  iii. Ten Captains engaged in illegal searches, and four were later promoted (40%);

iv. Forty-Six Lieutenants engaged in illegal searches, and twenty-three were also promoted,

v. Two Hundred and Twenty Six Sergeants engaged in illegal searches, One Hundred Eleven were promoted (49%);

vi. Seven Hundred Ninety Four police officers engaged in illegal searches, Three Hundred and Fifty Nine were later promoted (45%).

vii. Of the Three Hundred-Nine police officers known to have violated the Fourth Amendment, the vast majority, Two Hundred Ninety-One, were promoted to detective – a promotion supposedly based entirely on merit.

viii. These substantiated complaints represent the most extreme police misconduct, because CCRB only substantiates complaints when the misconduct is virtually undeniable. Therefore, the 1,374 instances of misconduct listed above de not represent all of the allegations of illegal searches which were investigated; rather, they represent only the most severe instances of misconduct, which were proven by substantial evidence.

ix. In 2019, Eastern District of New York Judge Raymond J. Dearie reviewed multiple unsubstantiated CCRB closing reports and found that:

(1) Investigators systematically use to credit testimony by civilian witnesses with regards to use of force yet routinely credit uncorroborated statements by the officers. Investigators decline to substantiate allegations ,even when they find them to be plausible, whenever the officers deny the offending conduct.

(2) In one-on-one confrontations between an officer and an individual, the standoff is always resolved In favor of the officer. (3) Investigators reach conclusions that defy common sense and do not logically flow from the investigation's factual record. (4) The depth of investigation conducted doses not match the gravity of the allegations (5) Investigators do not consider the officer's complaint history to identify patterns in the officer's behavior.

61. On November 15, 2020, the New York Times reported that out of 6,900 of the misconduct charges recommended for sanctions by the CCRB the **NYPD** leadership reduced the recommended penalty in 71 percent of the cases. By far the most common penalty actually was a loss od vacation days.

62. No matter what the misconduct, **NYPD** officers almost never lose their jobs. There are approximately 36,000 NYPD Officers The CCRB has investigated more than 48,000 officers over the last several decades, according to data released last year. As of 2020, only nine officers have ben terminated following a finding of misconduct.

63. Even in particularly egregious cases, the **NYPD** refuses to effectively discipline officers.

64 For example, David "Bullethead" Grieco has been the subject of almost three dozen lawsuits and numerous incidents of misconduct, almost all violations of the Fourth Amendment. In one 2020 case, the litigants allege the Grieco and a group officers "forcefully entered: the Plaintiffs' apartment without consent, arrested its occupants—including a paraplegic man who was subjected to excessive force – and unlawfully searched each apartment in the home. On a separate occasion

13

Grieco burst into a home without a warrant and detained six-year-old twins, who he then transported to the precinct.

65. Nonetheless, Grieco was promoted to sergeant in 2018 after making over $190,000 in fiscal year 2017. The City has paid over $600,000 in settlements arising from Grieco" unlawful tactics, yet the NYPD continues to allow Grieco to remain on the force with almost no oversight or discipline.

66. But, as if this statistical data was not enough **BOWENS**, the police officer who is the subject of the lawsuit had 20 complaints and 46 allegations of police misconduct filed against him. Not one was substantiated. It took the murder and attempted murder of two people to realize what to toothless tiger the CCRB turned out to be.

67. These patterns of unlawful searches and seizures are present at every level of the **NYPD** command, demonstrating that (1) the culture and policies of the **NYPD** have long failed to protect the Fourth Amendment rights of New Yorkers; and (2) officers who have substantiated complaints regarding violations of the Fourth Amendment have no trouble climbing to the highest ranks if the department, further perpetuating these unconstitutional practices.

68. For example, while holding the rank of Commanding Officer of the 44th Precinct, then Inspector Brian Mullen unlawfully ordered the false arrest of adult male and fifteen-year-old minor son inside a hospital where they were visiting an ailing family member. The minor son was victim of an attempted robbery in the waiting area of the hospital, which triggered the police response. Rather than investigate the crime committed against the teen, Mullen and his officers employed excessive force and arrested the boy and his father. This Fourth Amendment violation was

14

eventually substantiated by the CCRBM who recommended disciplinary action. The NYPD declined to discipline Mullen at all.

69. Chief-of-Crime Control Strategies, Michael Liperti's multiple CCRB complaints include a substantiated complaint from 2015 in which Liperti, an Inspector at the time, four other officers, barged into a man's home unannounced at 5:00 a.m. where the man and his family members including two children , were sleeping, Not only was the entry itself unlawful. But the officers also broke into the wrong home. No one bearing the name on the arrest warrant lived in or was present in the apartment, Although CCRB recommended "formalized training:, Liperti only received "instructions" for the violation, the lenient response.

70. Before Chief of Department Rodney Harrison was promoted, he was a sergeant at the 83rd Precinct in Brooklyn when he and a group of officers illegally entered the apartment of a mother and her five children with their weapons dawn, calming that they were searching for the children's father. The CCRB recommended departmental changes, but the NYPD imposed command discipline –which almost always amounts to only a loss of vacation days.

71. Even NYPD police Commissioner Dermot F. Shea has a least one sustained CCRB complaint for violations of the Fourth Amendment on his record which included an illegal vehicle stop., illegal search of persons, and illegal search of a car. When the CCRB recommended charges, the **NYPD** instead ordered that Shea and the other involved officer undergo departmental 'instructions".

72. Because of practices and de facto polices maintained by the City of New York the Individual Defendants had every reason to believe they would not receive any

15

meaningful punishment for gross misconduct and lying about it, nor did they have reason to believe that gross misconduct in the course of their duties would in any way impair their chances if being promoted of continuing on a lengthy and decorated career in the department.

73. One thing is clear: the City of New York abdicated its responsibility to the public by turning a blind eye to police officers fabricating evidence, wrongfully convicting people, withholding, Brady material, engaging in unreasonable and unlawful searches and seizures, and lying. Indeed, it encouraged this behavior by failing to train and supervise officers, and by failing to discipline wrongdoers. In fact, it promoted miscreants, put them in supervisory positions, and created a culture in the **NYPD** where wrongdoing and coverups are acceptable customs and practices.

74. As a result of these unconstitutional policies and practices, Plaintiffs were deprived of their constitutional rights and the City of New York is liable under *Monell* for damages caused by the Individual Defendants.

## DAMAGES

75. As a direct and proximate result of the said acts of the defendant, **JASON OLIVER** suffered the following injuries and damages:

    a. Violation of his rights under the Fourth and Fourteenth Amendments to the Constitution;

    b. Loss of physical liberty due to his initial incarceration;

    c. Further restriction of his liberty due to forced court appearance and probation;

  d. Humiliation, embarrassment, injury to reputation, physical abuses;

  e. Extreme emotional distress;

  f. Severe disruption of family.

Wherefore, plaintiff request the following relief as against all of the defendants:

1. Award compensatory damages in an amount to be determine by the Court..

2. Award attorneys' fees as fair and seasonable compensation for services rendered in connection with this action:

3. For such other and further relief as to this Court may deem just and proper.

Dated: March 3, 2025
Bronx, New York

                Respectfully submitted,

                */s/ Rudy Velez/*
                RUDY VELEZ
                930 Grand Concourse Suite
                Bronx, New York 10451
                (917) 674-0572
                rvesq@yahoo.com
                Attorney for JASON OLIVER